**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| DWIGHT JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:07-CV-541-TS |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Dwight Johnson filed a *pro se* Petition Under 28 U.S.C. Paragraph 2254 For Writ of Habeas Corpus By a Person in State Custody Seeking Review of a Prison Disciplinary Sanction [DE 1] to challenge his loss of 365 days earned credit time. For the reasons stated in this Opinion and Order, the Petition will be denied.

**A.     Background**

A Disciplinary Hearing Body ("DHB") at Chain O'Lakes Correctional Facility found Johnson guilty of attempting to commit a Class A felony: aiding, commanding, inducing, counseling, procuring, or conspiring with another person to commit escape.  The conduct report completed by Lt. Terry Skiles states as follows:

> On July 17, 2007, I (T. Skiles) began an investigation into the allegation that Offender Dwight Johnson #984292 had commanded Ms. Tonie Biship to pick him up on Tuesday, July 17, 2007, in Ft. Wayne, Indiana, to escape custody from Indiana Dept. of Corrections.  I ended that investigation on July 20, 2007.
>
> From the results of that investigation I concluded that Ofd. D. Johnson did plan to leave his work crew that day and meet with Ms. Tonie Biship whom he had commanded to pick him up saying that he was being released early and needed a ride.  Ms. Biship refused to participate in Ofd. D. Johnson's plan and foiled his escape.

[DE 6-2.]  The report of investigation further details the incident:

On July 17, 2007, at approximately 11:10 a.m. I (T. Skiles) received a telephone call from Ms. Toni Biship.  She had called inquiring about the release status of Offender Dwight Johnson #984982, housed at the Chain O'Lakes Correctional Facility.  She asked if Ofd. D. Johnson was being released that day (7.17.07)?  I checked the offender release information in the Control Room . . . [and] did not find any release papers for Ofd. D. Johnson and told this to Ms. T. Biship who was not surprised that he was not being released.  She told me she thought his release date was in November 2009.  I questioned her asking what this was about.  She explained Ofd. D. Johnson had telephoned her Monday evening (7.16.07) a little after 5:00 p.m. from a phone at 260.636.7560 (cell phone caller ID).  She was concerned about the truthfulness of Ofd. Johnson's conversation the night before and called the number (COLCF business line) and was directed to me by the COLCF secretary.  Ms. T. Bishop told me that Ofd. D. Johnson had told her that he was being released tomorrow (Tuesday) and wanted her to pick him up in Ft. Wayne (Indiana) at a given location.  She told me she didn't remember the pickup spot because she 'shut him out' knowing his release couldn't be Tuesday and that he had in the past told her things that she believed to be true and had gotten into trouble for it.  Not believing his release (on Tuesday) she asked him if he was 'trying to run' at which time he got mad saying things about her and the past (they were married now divorced).  He calmed down but kept talking about the past and wanting to 'get out of Chain O'Lakes and back to Miami' (Miami Corr. Facility).  She said she got tired of his 'going on' and hung up after a couple of minutes.  Ms. T. Bishop went on to say she had visited Ofd. D. Johnson at COLCF on Saturday (7.14.07) and his upcoming release on Tuesday was not mentioned.  Further questioning revealed she had remarried and moved to Tennessee and returned to Indiana to visit relatives.

Offender Dwight Johnson #984292 is housed at the Chain O'Lakes Correctional Facility and assigned to work on the 'State Road Crew.' This crew is supervised by a Correctional Officer who receives work assignments from the Indiana Dept. of Transportation, Ft. Wayne district.  The crew regularly works at the INDOT garage/complex, on state highways and at rest areas in the Ft. Wayne district.

The crew supervisor was alerted to the situation and verified Ofd. D. Johnson's whereabouts (with him).  The crew returned to COLCF early without incident.  Ofd D. Johnson was then transported to the Noble County Jail for safekeeping.

Sergeant A.J. Debes told me that he had approved a 'short' phone call for Offender Dwight Johnson on Monday evening (7.16.07) around 5:00 p.m.  The call was on a COLCF business line lasting approximately two minutes using a phone at the front entrance desk.  Sgt. Debes was not close enough to the phone to hear any of the conversation.  Sgt. Debes did see Ofd. Johnson sitting at the desk,

> bent over the phone leaning on his elbows with his forearms beside his face and head.
>
> COLCF visiting records confirm that Ms. Toni Biship visited Ofd. D. Johnson on Saturday, 7.14.07.
>
> I interviewed Offender Dwight Johnson at the jail on July 19, 2007. He claimed that he: did not ask/tell Tonie Biship to pick him up in Ft. Wayne on Tuesday, July 17, 2007 (or any other time). was not planning to walk off or escape from the crew. did talk to her on the phone Monday evening asking her to drop off his work boots and glasses Tuesday at COLCF during the day. had asked her Saturday (during visit) to get his boots and glasses and drop them off Monday. She didn't and he called her to find out what happened. does not want to leave COLCF and return to Miami Corr. Facility, [he] and T. Biship are friends and get along OK (even though divorced).
>
> . . .
>
> Ofd. D. Johnson is assigned to a work crew working in and around the Ft. Wayne area where he [could] easily walk away from his crew and meet a ride to escape.

[DE 6-4.] An incident report was also completed by the officer in charge of Johnson's work crew, stating:

> At this time (7-17-07; 11:22 A.M.) I received a tx from Lt. Skiles stating the OFD Johnson D was possibly trying to escape and to keep a close eye on him. The next 2 ½ hours I tried but OFD Johnson would take off and go back to the DOC bus. When he got to the bus he appeared to be looking out the windows for someone.
>
> On 7-18-07 when we took his equipment bag down we found personal family pictures in an envelope with a phone #. OFD Johnson did appear to be somewhat nervous.

[DE 6-3.]

On July 20, 2007, Johnson was notified of the charges. The screening report reflects that he pleaded not guilty, requested a lay advocate, and declined to request any witnesses or physical evidence. [DE 6-4.] On July 21, 2007, a three-member DHB conducted a disciplinary hearing,

3

found him guilty, and imposed a sanction of 365 lost earned credit time, a credit class demotion from credit class I to class III, and a transfer to another facility. Johnson's appeals to the facility head and the final reviewing authority were denied. [DE 6-8, 6-9.]

**B.     Discussion**

Where prisoners lose good time credits in prison disciplinary hearings, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). There must also be "some evidence" to support the decision of the prison disciplinary board. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Johnson raises three claims in his Petition. First, he claims there was insufficient evidence to find him guilty. In reviewing a DHB's decision, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56. In this case, there was ample evidence in the record to support the conclusion reached by the DHB, including the conduct report, the investigation report detailing Bishop's phone call to Lt. Skiles, Johnson's

4

own admission that he called Bishop the night before the alleged escape, and Johnson's suspicious behavior the day of the alleged escape. Although Johnson vigorously denies that he was planning to escape, it is not the province of this Court to reweigh the evidence or make its own determination regarding the relative credibility of the witnesses. *McPherson*, 188 F.3d at 786. Johnson also complains that the DHB relied on "hearsay" evidence in making its determination, but this claim, even if true, provides no relief because formal rules of evidence do not apply to prison disciplinary proceedings, nor is there any due process right to confront or cross-examine witnesses. *Wolff*, 418 U.S. at 566; *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Because there is some evidence to support the DHB's determination, there is no basis for granting habeas relief on this ground.

Next, Johnson claims that the DHB was not impartial. He asserts that one of the DHB members, Ronald Moening, was a former state police officer with whom he was involved in some type of "incident" in 1996, which Johnson believes biased Moening against him. Johnson offers no documentary or other evidence to support this assertion, nor does he describe this alleged incident. Regardless, this claim is procedurally defaulted. State inmates who challenge prison disciplinary proceedings must exhaust all levels of state review and comply with all state procedural requirements or they forfeit their right to proceed in federal court. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002); *Markham v. Clark*, 978 F.2d 993, 995 (7th Cir. 1992). Under IDOC's Adult Disciplinary Procedures, an appeal must first be made to the facility head, and then to the state final reviewing authority. *See* Ind. Dep't of Corr., Disciplinary Code for Adult Offenders VIII.D. The procedures further provide that the second-level appeal "may be based only upon contentions submitted in the first level appeal." *Id.* Here, Johnson did not raise any

5

claim about the DHB's impartiality in his initial appeal to the facility head. [DE 6-8.] Because this argument was not raised at all available administrative levels, it is defaulted and cannot be reviewed in this proceeding. Although a procedural default may be excused by a showing of cause and prejudice, or a showing that failure to review the claim would amount to a fundamental miscarriage of justice, *Moffat*, 288 F.3d at 982, Johnson does not argue that his procedural default should be excused for either of these reasons, nor does there appear to be any basis for concluding that he can satisfy either of these grounds based on the Court's review of the record.

Next, Johnson claims that he was denied the right to call witnesses in his defense. He asserts that at the start of the hearing, he requested that the DHB "call or get a statement" from Bishop. A prisoner has a limited right to call witnesses and present documentary evidence consistent with correctional goals and safety, but he cannot wait until the hearing to request such evidence. *Sweeney v. Parke*, 113 F.3d 716, 719–20 (7th Cir. 1997) (where prisoner had opportunity to request witnesses when he was notified of the disciplinary hearing and chose not to, prisoner's limited right to call witnesses was fulfilled and his due process rights were not violated), *overruled on other grounds by White v. Ind. Parole Bd.*, 266 F.3d 759, 765–66 (7th Cir. 2001). Despite Johnson's contention, there is nothing on the hearing report to reflect that he made a request for witnesses at the hearing. [DE 6-7.] Even assuming Johnson made such a request at the hearing, his request was untimely. The screening report shows that at the time he was notified of the charges, he did not request any witnesses or other documentary evidence. [DE 6-5.] Accordingly, there is no basis for granting habeas relief on this ground.

Finally, Johnson suggests in his Traverse that he did not receive twenty-four hours notice of the hearing in accordance with *Wolff*. [DE 9 at 1.] He asserts that he was screened at approximately 2:00 p.m. on July 20, 2007, and that the hearing was held at 8:00 a.m. on July 21, 2007. The screening report reflects that Johnson was actually screened at 10:13 a.m. on July 20, 2007, and there is nothing in the documents before the Court other than Johnson's own assertion to reflect what time the DHB hearing began the following day. [DE 6-5, 6-7.] Regardless, this claim is procedurally defaulted because Johnson did not raise it in his administrative appeals, nor did he raise it in his Petition filed with this Court. Johnson does not make any argument in support of excusing this procedural default, and the Court can discern no basis for doing so on the record.

For the foregoing reasons, this habeas corpus petition [DE 1] is **DENIED**.

SO ORDERED on November 2, 2009.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT  
FORT WAYNE DIVISION
